IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| ETHAN WOOD, | ) | CIVIL ACTION NO. 9:14-1684-DCN-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiff filed the Complaint in this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner wherein he was denied disability

benefits. This case was referred to the undersigned for a report and recommendation pursuant to

Local Civil Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on August 4, 2010 (protective

filing date), alleging disability as of July 16, 2010 due to left knee surgery, right shoulder surgery,

breathing problems due to his weight, and having to use a CPAP machine to sleep. (R.pp. 112-115,

136). Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then requested

a hearing before an Administrative Law Judge (ALJ), which was held on July 25, 2012. (R.pp. 50-

79). Shortly before the hearing, Plaintiff amended his alleged disability onset date to November 8,

2010. (R.p. 131). The ALJ thereafter denied Plaintiff's claim in a decision issued October 30, 2012.



(R.pp. 18-28). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-6).

Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is generally limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

2



The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was forty-one (41) years old on his amended alleged disability onset date,[1] has a high school equivalency (GED) education with past relevant work as a material handler and forklift operator. (R.pp. 18, 25, 54, 57-58, 112). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months.

After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of degenerative joint disease and chondromalacia of the left knee[3] and obesity, thereby rendering him unable to perform his past

---

[1]The decision lists Plaintiff's age as being forty; however, he was forty-one years old on November 8, 2010, having turned forty-one on August 1, 2010. (R.pp. 26, 112).

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[3]Also known as "runner's knee," this is a condition where the cartilage on the undersurface
(continued...)



relevant work, he nevertheless retained the residual functional capacity (RFC) to perform a restricted range of light work,[4] and was therefore not entitled to disability benefits. (R.pp. 20, 22-23, 26-27).

Plaintiff asserts that in reaching his decision, the ALJ erred by improperly evaluating the opinion of Plaintiff's treating physician, Dr. Randal Moss.[5] Plaintiff further argues that the Appeals Council did not properly weigh and consider new evidence that was submitted to that body on appeal, thereby requiring remand for a proper consideration of this evidence. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

---

[3](...continued)
of the patella (knee cap) deteriorates and softens.
http://www.healthline.com/health/chondromalacia-patella#Overview1, August 7, 2012.

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

[5]Plaintiff also initially asserted that the ALJ erred by improperly relying on vocational expert testimony at the hearing where there was a conflict between that testimony and the Dictionary of Occupational Titles (DOT). The DOT is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002). However, Plaintiff withdrew that claim in his response brief. See Plaintiff's Response, p. 1.

4



# I.

## (Medical Evidence)

The record reflects that Plaintiff has been complaining about left knee pain at least as far back as January 2008. A medical record from March 17, 2008 shows that Plaintiff had self referred himself to Dr. Frank Phillips for evaluation of his left knee, complaining of left knee pain that dated back "a few months". Plaintiff was working at UPS freight at that time. Plaintiff was noted to be obese (he weighed 315 pounds), but he had no focal motor or sensory findings neurologically, while examination of his upper extremities and right knee were also benign. On the left he had 1 + effusion and mild varus posturing. An x-ray taken of the left knee also revealed some varus of the knee. Dr. Phillips diagnosed left knee pain secondary to degenerative joint disease with jenu varum with acute flare, he was given an injection, and was told to return in a month. (R.p. 210). The following September (September 3, 2008) Plaintiff went to Dr. Moss (his family physician) complaining of pain in both of his knees. Dr. Moss noted that Dr. Phillips had given Plaintiff a cortisone shot in his left knee six months earlier, and he also gave Plaintiff an injection in his left knee. (R.p. 215). Plaintiff was then a no show for his next scheduled appointment in December. Id.

Plaintiff returned to see Dr. Phillips on May 11, 2009, where it was noted that he had had an MRI which had apparently shown a "large Baker's cyst in his knee".[6] Plaintiff complained of "significant knee pain and swelling" that was interfering with activities of daily living. On examination Plaintiff was found to be obese, but an arthritis series taken that day showed good

---

[6]A fluid-filled cyst that causes a bulge and a feeling of tightness behind your knee. http://www.mayoclinic.org/diseases-conditions/bakers-cyst/basics/definition/con-20023332, August 1, 2012.



preservation of the joint (apparently referring to the left knee) in all compartments, he had 3 + effusion of his left knee with significant posterior fullness, but there were no neurovascular changes noted. Dr. Phillips diagnosed left knee pain secondary to internal derangement with Baker's cyst, and recommended that Plaintiff have an arthroscopy performed on his knee. (R.p. 209). Dr. Phillips thereafter performed an arthroscopy two days later without complications. Plaintiff's post operative diagnosis was degenerative joint disease and chondromalacia of the left knee. (R.pp. 227-233).

Plaintiff was seen for followups over the next few months, which were generally uneventful (see (R.pp. 206-208)), and on June 23, 2009 Dr. Phillips recorded that Plaintiff looked to be "doing well", and that he would "like to give [Plaintiff] a couple of weeks of self conditioning and let him return to work on 7/13/09". Dr. Phillips also noted that Plaintiff would be "unrestricted when he returns to work". (R.p. 205). When Plaintiff returned to see Dr. Phillips on July 21, 2009, it was noted that he had "been back to work about the last week". While Plaintiff was still complaining of pain in his knee, Dr. Phillips explained to him that "it would take 6 months to reach maximum medical improvement". (R.pp. 204).

On August 21, 2009, Plaintiff returned to see Dr. Moss, stating that he needed some pain medication. Dr. Moss assessed Plaintiff with chronic left knee pain and edema, and prescribed some medications (Lortab and Lasix). (R.p. 215). This was over a year before Plaintiff claims his condition became disabling. On November 18, 2009, Dr. Moss prescribed some Ultram. Id. Plaintiff returned to see Dr. Moss six months later, on May 10, 2010, for a "check up". Although



Plaintiff continued to complain of pain in both of his knees, he said that his shoulder was "better".[7] (R.p. 214).

On July 22, 2010, Plaintiff was seen in the emergency room of the Upstate Carolina Medical Center for a "mild" lower leg injury of about 1 weeks duration after his left anterior leg had been accidentally struck with an ax. Plaintiff was positive for erythema, lesions and swelling on the left leg, with all other systems reviewed noted to be negative. On examination Plaintiff was found to have full range of motion in all joints, with his edema being described as "mild". Plaintiff also had an x-ray taken of his left tibias-fibula, which found no fracture, and it was noted that his other labs had been reviewed and were all normal. Plaintiff was diagnosed with a contusion of the left lower leg and cellulitis and discharged in stable condition with instructions to call Dr. Moss for a recheck. (R.pp. 219-221). However, Plaintiff was a "no show" for a scheduled appointment with Dr. Moss on August 6, 2010. (R.p. 214). There is no indication of a disabling condition in this evidence, and indeed Plaintiff does not claim that his impairments were disabling during this time.

Plaintiff was thereafter referred by his attorney to Dr. Walter Grady, an orthopedist, for a consultative evaluation. Dr. Grady saw the Plaintiff on September 20, 2010. Plaintiff complained to Dr. Grady that he had been having left knee problems since his surgery in 2008, and Dr. Grady noted that Plaintiff's attorney wanted to know if Plaintiff's recent accident could have aggravated the previous injury to his knee. Plaintiff told Dr. Grady that on July 16, 2010 he had been using an ax to chop bull horns off when he had accidentally hit his left anterior tibial region, and event though he had not returned to the doctor since his ER visit of July 22, 2010 (including being

---

[7]While there is no indication in the records cited hereinabove that Plaintiff was having any significant shoulder problems during this time, the record reflects that he had had surgery on his shoulder sometime in the past. (R.p. 211).



a "no show" for a scheduled appointment on August 6, 2010), he told Dr. Grady that he had been experiencing paint at a level of 8 on a 10 point scale.

On examination Dr. Grady found both Plaintiff's previous knee operation as well as his recent ax penetration injury to be well healed. Even so, Plaintiff complained of "exceptional" tenderness of the left knee on palpatory examination, and he exhibited range of motion in his left knee from 0 to 75 degrees (conversely, in the right knee it was 0 to 110). However, Plaintiff had 5/5 (full) extension strength, with flexion strength on the left being about 4/5, although he was "inhibited somewhat" in his strength testing by complaints of pain. Dr. Grady also noted that Plaintiff did not appear to have a remarkable amount of effusion in his left knee, with three out of four "provocative testing" events being "negative". Dr. Grady further noted that there was no radiographic evidence of any fracture of the tibia or of the lower left leg, but since the clinical examination findings were consistent with significant diminution in range of motion in the left knee and medial meniscus tear in the left knee, he recommended that Plaintiff have an MRI of his left knee and x-rays of his knees bilaterally. After concluding his examination, he rated Plaintiff as having a twenty percent (20%) impairment in his left lower extremity, which correlated to a whole person impairment of only eight percent (8%). (R.p. 284-288). See Waters v. Gardner, 452 F.2d 855 (9th Cir. 1971)[concluding that a whole person impairment rating of less than thirty (30%) percent was inconsistent with allegations of disability].

As noted, Plaintiff does not even himself contend that he was disabled during the time period represented by the medical records discussed hereinabove. Therefore, in order to obtain disability benefits, he must show that his condition substantially worsened after November 8, 2010 (his alleged disability onset date) from what it had previously been. Orrick v. Sullivan, 966 F.2d



368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].

On November 8, 2010 (his alleged disability onset date), Plaintiff went to see Dr. Russell Rowland for another consultative examination. Plaintiff told Dr. Rowland he had left knee pain and shortness of breath with exertion. Dr. Rowland noted that Plaintiff had a past history of right shoulder surgery (which was "no problem now") and that he used a CPAP device every night because of sleep apnea. Plaintiff was also obese. Dr. Rowland reviewed Plaintiff's medical records and went over an oral history with him. With respect to medications, Plaintiff told Dr. Rowland that he took three Aleve or Advil tablets each morning, and that he had previously been on Lotrel for high blood pressure. He had a cane in his left hand and had a mild to moderate antalgic gait on the left. Plaintiff told Dr. Roland that using a cane significantly decreased his pain in his left knee, which would sometimes buckle.

On examination Plaintiff was found to have a "large frame" with a "normal" station. Plaintiff's extremities had no edema, and he had no muscle atrophy. Cf. Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008) [Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]. Plaintiff had normal range of motion in his upper extremities with 5/5 (full) strength and grip. Plaintiff's ankles also had normal range of motion, and he could flex his hips eighty degrees with other range of motion being normal for his size. He could flex his right knee 120 degrees and extend it to 0 degrees, and his left knee 100 degrees and extend it to 0 degrees. Plaintiff's right knee was normal. He had some patellofemoral crepitus on the left knee with some "mild" tenderness in the medial and lateral knee joint and distal patella, with "moderate" tenderness



just above the medial knee joint space. There was no joint effusion detected. Plaintiff's spine had a normal alignment with no muscle spasm or tenderness. Straight leg raising and seated straight leg raise were both negative, while deep tendon reflexes were absent in both the upper and lower extremities due to poor relaxation. Plaintiff was unable to do a tandem gait because of left knee pain and obesity, but his Romburg[8] was negative. (R.pp. 238-242). There is nothing in these findings to indicate that Plaintiff had impairments that were totally disabling, and the ALJ gave them great weight. (R.pp. 25-26). See Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability].

Dr. Rowland diagnosed chronic left knee pain with probable significant degenerative joint disease and patellofemoral arthritis, and believed Plaintiff probably needed to use a cane when weight bearing as he was morbidly obese. He also noted that Plaintiff used a CPAP every night, and although there was no evidence of chronic bronco pulmonary disease, he diagnosed dyspnea on exertion secondary to obesity. While Dr. Rowland believed that Plaintiff had decreased endurance secondary to obesity, he opined that Plaintiff's main problem was his left knee, and recommended that Plaintiff have an x-ray of his left knee. (R.pp. 238-242).

Plaintiff did have a left knee x-ray taken that same day, which found "subtle to mild" narrowing of the medial tibiofemoral joint compartment without subchondral cysts, scoloris or marginal osteophytes being apparent. Plaintiff's patellofemoral and lateral tibiofemoral joint compartments were well maintained without any overt arthropathy, Plaintiff's tibiofibular joint was

---

[8]A Romberg test is an indication of loss of the sense of position in which the patient loses balance when standing erect, feet together, and eyes closed. http://medical-dictionary.thefreedictionary.com/Romberg's+test, 2009.



also unremarkable, there was no subluxation or dislocation seen, and there were no osteochondral defects or loose bodies identified. There was also no osteopenia apparent, there were no destructive or erosive bone lesions evident, there were no soft tissue masses or abnormal calcifications seen, and there was no fracture identified. Other than a small suprapatellar joint effusion being apparant, the only other impression was probable early chondromalacia and arthropathy of the medial tibio femoral joint compartment. (R.p. 237). Plaintiff also had his right shoulder x-rayed, which found tiny degenerative or traumatic subcondral cysts in the distal clavical, with no other abnormalities recognized. (R.p. 236).

On December 1, 2010, state agency physician Dr. Frank Ferrell reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment in which he opined that Plaintiff had the RFC for light work with the ability to stand and/or walk (with normal breaks) for a total of at least two hours in an eight hour work day, and sit (with normal breaks) for a total of about six hours in an eight hour work day. Otherwise, Plaintiff had an unlimited ability to push and/or pull (including operation of hand and/or foot controls). Dr. Ferrell believed that Plaintiff could frequently balance and kneel, that he could occasionally climb ramps/stairs, stoop, crouch and crawl, but never climb ladders/ropes/scaffolds. He had no manipulative, visual, communicative, or environmental limitations. (R.pp. 243-250). Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

On December 7, 2010, Plaintiff presented to the Spartanburg Regional Medical Center with complaints of chest pain. On examination by emergency room physician Dr. Lisa Swann, Plaintiff was found to have no musculoskeletal pain, swelling, heat or redness in his muscles or



joints, he had no limitation of motion, no muscular weakness, and no atrophy or cramps. He was also in no acute respiratory distress, and his heart had a regular rate and rhythm. On examination Plaintiff's extremities were found to have no edema, clubbing or cyanosis, he had + 3 pedal and radial pulses, he had normal muscle strength, movement and tone, no muscle atrophy, a normal range of motion, and a normal gait. (R.pp. 262-263). A separate consultation performed by Dr. Samuel Gacha noted that Plaintiff had arthritic problems, but no claudication musculoskeletally, and that his extremities revealed no cyanosis, clubbing, or edema, with only diminished pulses in his feet being found. Dr. Gacha noted that Plaintiff had told him that he was "generally healthy with no serious ongoing medical problems", and that he took "no regular medications". (R.pp. 266-267). It was noted that Plaintiff improved with conservative management, and he was released that same day "completely asymptomatic". (R.p. 253). Again, there is no evidence of any disabling impairments in these records.

Four months later, Plaintiff was seen on April 6, 2011 at the Upstate Carolina Medical Center complaining of left lower leg swelling with pain. It was noted that he was able to ambulate independently, and that he could perform all activities of daily living without assistance. Nonetheless, Plaintiff stated that he was experiencing pain at a level of 8 on a 10 point scale, with the onset of pain being 4 to 7 days ago. Plaintiff stated that in the past few day he had hit his leg and that it had started to hurt again and that was red and swollen. Plaintiff was observed to be able to move all four extremities equally with equal strength, and he denied any numbness or tingling. Plaintiff's heart rate was within normal limits and his peripheral pulses were equal and strong bilaterally. Lung sounds were clear bilaterally, and respiratory effort was unlabored. Plaintiff denied musculoskeletal pain, numbness or tingling, and there was no swelling or deformity noted. He had



full range of motion in his extremities.  Plaintiff was discharged that same day with his condition noted as "improved".  (R.pp. 296-298).

On June 20, 2011, state agency physician Dr. Shanker Gupta reviewed Plaintiff's medical records and opined that Plaintiff had the RFC for light work with the same limitations opined to by Dr. Ferrell in his Functional Capacity Assessment, with the exception that Dr. Gupta believed that Plaintiff could only occasionally balance and kneel (whereas Dr. Ferrell had opined that Plaintiff could frequently perform these postural activities).  (R.pp. 90-91).  Smith, 795 F.2d at 345 [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

Plaintiff returned to see Dr. Moss on November 14, 2011, where he noted that Plaintiff had not been at work in about two years due to chronic knee pain, low back pain, and marked exogenous obesity.  Dr. Moss ordered a change in Plaintiff's Lortab prescription.  (R.p. 289).

Three months later, on February 21, 2012, Dr. Moss completed a Physical Capacity Evaluation Clinical Assessment of Pain in which he opined that Plaintiff could sit for six hours in an eight hour work day (two hours total at a time), stand for one hour and walk for one hour;[9] that he could frequently lift up to ten pounds, occasionally lift up to twenty pounds, but never lift more than that; that he could occasionally carry up to five pounds but never carry any more than that; that he had no manipulative limitations regarding use of his hands but could not use his feet for repetitive movements due to severe osteoarthritis in his knees; that he could frequently reach, occasionally bend, but never squat/crawl/climb; and that he had a mild restriction with respect to exposure to

---

[9]Although Dr. Moss opined that Plaintiff could stand for only one hour during an entire eight hour work day, he also opined that Plaintiff could stand for two hours at a time.  (R.p. 305).



marked changes in temperature and humidity and with respect to driving an automobile; a moderate limitation in being around moving machinery and with respect to exposure to dust, fumes and gases; and a total restriction with respect to being around unprotected heights. (R.p. 305).

   Dr. Moss also completed a Clinical Assessment of Pain, in which he opined that Plaintiff suffered from pain  significant enough to distract him from the adequate performance of daily activities or work, and that physical activity would greatly increase his pain to such a degree as to cause distraction from the task or even total abandonment of the task.  He also opined that side effects from Plaintiff's medications could be expected but would be only mildly troublesome, but then (contradictorily) opined that the pain and/or drug side effects could be expected to severely limit Plaintiff's effectiveness from performing his previous work activities.  Finally, Dr. Moss opined that although the level of Plaintiff's pain might be less intense or less frequent in the future, it would still remain a significant element in his life. (R.p. 306).

   On May 14, 2012 Plaintiff returned to the Upstate Carolina Medical Center, again complaining of chest pain, with the onset of symptoms being about three days ago.  On review of systems Plaintiff was positive for chest pain, but negative for all other systems reviewed.  On examination Plaintiff was found to be in no acute distress, and his cardiovascular examination was normal.  A musculoskeletal examination found normal joint range of motion with no swelling or deformities.  Plaintiff was also negative for cyanosis, clubbing or edema.  Plaintiff's condition was determined to be non-emergent, and he was discharged home that same day in improved condition. (R.pp. 290-292).



## II.

### (Treating Physician's Opinion)

Plaintiff initially asserts that the ALJ committed reversible error by failing to give great weight to Dr. Moss' February 2012 Clinical Assessment of Pain in which he opined that Plaintiff suffers from pain at a level to be distracting to the adequate performance of daily activities or work, and with physical activity likely increasing Plaintiff's pain to such a degree as to cause distraction from the task or even total abandonment of the task, as well as that Plaintiff's pain and/or drug side effects could be expected to severely limit his effectiveness due to distraction, inattentiveness, or drowsiness. However, while Plaintiff is correct that a treating physician's opinion can be entitled to "great weight" (and the ALJ did in fact give great weight to the functional limitations identified by Dr. Moss), he gave "no weight" to Dr. Moss' pain assessment, finding that the level of pain opined to by Dr. Moss was not consistent with, and was indeed contradicted by, the record as a whole. (R.p. 25). After careful review of the record before this Court, the undersigned can find no reversible error in the ALJ's treatment of this evidence. Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

The ALJ's decision reflects that he reviewed and discussed all of the medical evidence with respect to Plaintiff's condition, including both Dr. Moss' Physical Capacity Evaluation and his

15



Clinical Assessment of Pain. In doing so, he not only gave great weight to the functional limitations identified by Dr. Moss as Plaintiff's treating physician, but he specifically incorporated those functional limitations into Plaintiff's RFC. (R.pp. 22-23, 25, 305). This decision by the ALJ is supported by substantial evidence in the case record, as the functional limitations assigned by Dr. Moss were consistent with the record as a whole, including not just Dr. Moss' physical examination findings, but also those of consultative examiner Dr. Roland and the state agency physicians, whose opinions the ALJ also accorded great weight.[10] See generally, (R.pp. 21-22, 24-25). Craig, 76 F.3d at 589-590 [noting importance of treating physician opinions]; Richardson, 402 U.S. at 408 [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) [ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record]. Indeed, it is readily apparent that the ALJ gave Plaintiff every benefit of the doubt in determining his RFC by assigning him an even more restrictive RFC than was opined to by the state agency physicians. (R.p. 25). Marquez v. Astrue, No. 08-206, 2009 WL 3063106 at * 4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner]; cf. Muir v. Astrue, No. 07-727, 2009 WL 799459, at * 6 (M.D.Fla. Mar. 24, 2009)[No error where ALJ gave Plaintiff even a more restrictive RFC than the medical records provided]; see also Thomas v. Celebreeze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

---

[10] While the ALJ also cited to and considered the findings of Dr. Grady's Consultative Evaluation, he only gave "some weight" to Dr. Grady's opinion since this examination was performed prior to Plaintiff's amended alleged onset date of disability, and also because Dr. Grady did not identify specific functional limitations resulting from Plaintiff's knee impairment. (R.p. 26).



However, the ALJ gave Dr. Moss' clinical assessment of pain no weight, finding that Dr. Moss' own treatment notes did not support his assessment, while the other evidence directly contradicted his opinion as to the limiting effect of Plaintiff's pain.  In making this finding, the ALJ noted that notwithstanding his claims of disabling pain, Plaintiff was able to engage in such activities as mowing the lawn with a riding mower, that he was consistently noted to be ambulatory, that he was able to handle his own finances, use a computer and Facebook, follow instructions, and that he even went to Friday night football games on a regular basis.  (R.pp. 24, 172-174).[11]  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may consider whether claimant's activities are consistent with allegations].  The ALJ also noted that Plaintiff had consistently complained of pain as far back as when he was being treated by Dr. Phillips, well before Plaintiff alleges his condition became disabling, that there is no evidence of any significant worsening of his condition, that he was routinely found to have normal joint range of motion with no motor or sensory deficits, that his extremities displayed no edema or evidence of muscle atrophy, and that the extent of limitation claimed was not consistent with Dr. Moss' own functional findings.  See generally, (R.pp. 20-21, 23-26, 305); Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; see Burch v. Apfel, 9 F. App'x 255 (4th Cir. 2001)[ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.]; see also Gaskin, 280 Fed.Appx. at 477 [Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989)["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].

---

[11]Although not cited by the ALJ, Plaintiff also helped coach little league football and baseball.  (R.p. 174).



17

As correctly noted by the ALJ, there was also no indication in the medical records of Plaintiff suffering from any significant adverse effects from medications, even though that was one of the alternatives cited by Dr. Moss in his pain assessment, and in light of the evidence as a whole, the ALJ concluded that Dr. Moss' pain assessment was nothing more than an attempt to qualify Plaintiff for benefits.  (R.pp. 23, 25).  Cf. Craig, 76 F.3d at 589-590 ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; Mastro, 270 F.3d at 178  [ALJ may assign lesser weight to the opinion of a treating physician that was based largely upon a claimant's self-reported symptoms]; see also Johnson, 434 F.3d at 658 [ALJ properly rejected physician's opinion that was based on the claimant's own subjective complaints].  The ALJ properly exercised his roll as the fact finder in reaching this conclusion. Abez Velez v. Sec't of HHS, No. 92-2438, 1993 WL 177139, at * 7 (1st Cir. May 27, 1993) [Proper for ALJ to draw inferences from the evidence].

After a review of the evidence, the ALJ determined that the restrictions set forth in the RFC, which fully incorporated Dr. Moss' functional limitations, would accommodate Plaintiff's condition consistent with the medical evidence documenting his impairments, while also accommodating for Plaintiff's complaints of pain in determining an appropriate RFC.  See Welch v. Heckler, 808 F.2d 264, 270 (3d Cir.1986)[findings of moderate pain or discomfort were appropriately accounted for in a reduced RFC finding].  There is no reversible error shown with respect to these findings, nor does the undersigned find that the ALJ committed any reversible error in his consideration of the opinion of Dr. Moss consistent with the medical evidence in the record. Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Krogmeier, 294 F.3d at 1023 ["[W]hen a treating physician's opinions are inconsistent



or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; <u>cf</u>. <u>Craig</u>, 76 F.3d at 589-590 ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; <u>Poling v. Halter</u>, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001) ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"], citing <u>Kasey v. Sullivan</u>, 3F.3d 75, 79 (4th Cir. 1993).

        Therefore, this claim is without merit. <u>Gross v. Heckler</u>, 785 F.2d 1163, 1166 (4th Cir. 1986) [The mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; <u>Andreolli v. Comm'r of Soc. Sec.</u>, 2008 WL 5210682, at *4 (W.D.Pa. Dec. 11, 2008) ["It is well settled that a claimant need not be pain-free or experiencing no discomfort in order to be found not disabled" (citing <u>Welch v. Heckler</u>, 808 F. 2d at 270)]; <u>Plummer v. Astrue</u>, No. 11-6, 2011 WL 7938431, at * 5 (W.D.N.C. Sept. 26, 2011)[It is the clamant who bears the burden of providing evidence establishing the degree to which his impairment limits his RFC], <u>adopted by</u> 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx. 795 (4th Cir. 2012); <u>Hepp</u>, 511 F.3d at 806 [Noting that the substantial evidence standard requires even less than a preponderance of the evidence]; <u>Smith v. Chater</u>, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; <u>Carlson v. Shalala</u>, 999 F.2d 180, 181 (7th Cir. 1993) ["What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; <u>Guthrie v. Astrue</u>, No. 10-858, 2011 WL 7583572, at * 3 (S.D. Ohio Nov. 15, 2011), <u>adopted by</u>, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as



substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."];
<u>Kellough v. Heckler</u>, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)].

**III.**

**(Appeals Council Review)**

Plaintiff's other claim of error is that the Appeals Council failed to properly consider and review material evidence submitted to that body and erred in failing to remand the case for consideration of that evidence.

The record reflects that, after the ALJ's decision in this case, Plaintiff presented additional evidence to the Appeals Council which included a letter from Dr. Moss dated June 5, 2013 further discussing Plaintiff's medical condition. (R.p. 5). In this letter, Dr. Moss states that he had treated the Plaintiff for many years as his primary care provider, and that he had last seen the Plaintiff on July 19, 2012 (almost a year prior to the date of this new evidence). Dr. Moss states that Plaintiff suffers from osteoarthritis in his weight bearing joints, primarily his knees, which is exacerbated by his morbid obesity, and that as of the last time he had seen the Plaintiff, Plaintiff had told him that "he had not worked for over two years due to his chronic pain". Dr. Moss further opines that Plaintiff's degenerative disc disease in his lumbar spine, exacerbated by his obesity, would "contribute to causing him pain that would interrupt his concentration even at a sedentary job". Dr. Moss also states that Plaintiff suffers from severe sleep apnea, as demonstrated by a sleep study in 2003, and that even though Plaintiff had not had a recent sleep study, Dr. Moss was "certain" that his condition had not improved. Dr. Moss opined that if Plaintiff was working in even a sedentary



position he would tend to fall asleep, because "his sleep apnea is so severe that he would probably

need a surgical correction of his upper airway to improve his condition". Dr. Moss concludes by

stating that Plaintiff has been limited to the extent described in his statement for at least the past two

years. (R.p. 308).

> Pursuant to 20 C.F.R. §404.970:
>
> If new and material evidence is submitted, the Appeals Council shall consider the
> additional evidence . . . where it relates to the period on or before the date of the
> administrative law judge hearing decision. The Appeals Council shall evaluate the
> entire record including the new and material evidence submitted if it relates to the
> period on or before the date of the administrative law judge hearing decision. It will
> then review the case if it finds that the administrative law judge's action, findings, or
> conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). In order to be "new" evidence, the evidence must not be "duplicative or

cumulative," and in order to be "material," there must be a "reasonable possibility that it would have

changed the outcome." <u>Wilkins v. Secretary of Health & Human Servs.</u>, 953 F.2d 93, 96 (4th Cir.

1991). Here, the Appeals Council considered this evidence, but found that it did not provide a basis

for changing the Administrative Law Judge's decision. (R.p. 2). There is no error shown in the

Appeals Council decision.

The Fourth Circuit held in <u>Meyer v. Astrue</u>, 662 F.3d 700 (4th Cir. 2011), that Appeals

Councils are not required to articulate a rationale for denying a request for review, and are required

to make findings of fact and explain its reasoning only where it grants a request for review and issues

its own decision on the merits. <u>Meyer</u>, 662 F.3d at 706. While Plaintiff argues that this was new and

material evidence and that there is a reasonable possibility that it would have changed the outcome

of the decision had it been before the ALJ, the ALJ already had Dr. Moss' medical records and

evidence before him for consideration at the time he issued the decision, as well as the previous



opinions from Dr. Moss. Even though Dr. Moss had earlier opined that Plaintiff had the exertional ability for light work (as set forth in his Physical Capacity Evaluation of February 20, 2012), and even though Dr. Moss conceded that he had not seen the Plaintiff since prior to the ALJ having issued his decision, he opined in his new letter of June 2013 that he did not believe Plaintiff could perform even sedentary work. Dr. Moss does not cite to any new or different medical evidence to explain this change in his position, and does not really even set forth any specific functional findings (in contrast to his clear functional findings from February 2012), except with respect to setting forth a new opinion about Plaintiff's sleep apnea, which he based on a study from 2003 (eight years before Plaintiff even alleges he became disabled). Dr. Ross' statement that Plaintiff suffers from "severe" sleep apnea and that he is "certain" Plaintiff's condition had not improved is not based on any medical evidence Dr. Moss had before him for the relevant time period, and is even contradicted by Plaintiff himself, who testified at the hearing before the ALJ that although he used to have a CPAP machine to address a problem with sleep apnea, he no longer had "my sleep apnea problems no more" and no longer used a CPAP machine. (R.p. 61).

   In sum, this new letter does not address or change any of the other evidence relied on by the ALJ in reaching his decision. Dr. Moss submitted no additional records from his own practice to rebut the evidence already before the ALJ, nor was any other evidence from the relevant time period referred to or presented to call into question the consultative physician or state agency opinions cited by the ALJ in his decision. Therefore, the Appeals Council did not commit reversible error by finding that this new statement from Dr. Moss does not provide a basis for a reversal of the decision in this case.



**Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

April 15, 2015                          _____
Charleston, South Carolina              Bristow Marchant
                                        United States Magistrate Judge



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

